IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

NORA GLUTH,

    Plaintiff,

v.      Civil Action No. 1:11-cv-1126

THE FEDERAL HOME LOAN
MORTGAGE CORPORATION
LONG-TERM DISABILITY PLAN,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Nora Gluth's ("Plaintiff") Motion for Summary Judgment and Defendant The Federal Home Loan Mortgage Corporation Long-Term Disability Plan's Motion for Summary Judgment.

Plaintiff was formerly employed as a credit policy manager by the Federal Home Loan Mortgage Corporation ("Freddie Mac") in McLean, Virginia. Her employee responsibilities included supporting credit risk management, acting as a subject matter expert, consulting on credit policy, representing Freddie Mac at industry forums and events, managing staff in various capacities, and understanding and communicating credit risks, among other things. Plaintiff was enrolled in the Federal Home

1

Loan Mortgage Corporation Long-Term Disability Plan ("the Plan"), a policy issued and administered by Aetna Life Insurance Company ("Aetna"). The policy issued to Freddie Mac (the "Policy") provides that on the date that you first become disabled and until monthly benefits are payable for 24 months, the insured will be deemed to be disabled on any day if he or she is not able to perform the material duties of his or her own occupation solely because of disease or injury and the insured's work earnings are 80% or less of unadjusted pre-disability earnings. After 24 months, benefits are awarded only if the insured cannot work in any occupation. Material duties are those normally required for the performance of the insured's occupation. An occupation is viewed, by Aetna, as the job is normally performed in the national economy instead of how it is performed for the specific employer or at the specific location or worksite, and without regard to the insured's specific reporting relationship. Upon submitting a claim for benefits under the Policy the insured must provide proof of the nature and extent of the loss. The insured's benefits will be reduced by other income benefits. After receiving 24 months of benefits an insured is deemed disabled under the policy only if he or she is not able to work at any reasonable occupation. Additionally, the Policy provides that a disability period may end when Aetna finds the insured is no longer disabled, or the insured fails to

provide proof of disability. The Policy also provides for an appeals process in the event of an adverse benefit determination which allows for the submission of additional proof of disability.

In September 2009, Plaintiff submitted an application for benefits, listing the following ailments; fibromyalgia, sleep apnea, cervical disc disease, and osteoarthritis. She stated that she was unable to perform her occupation due to inability to sustain concentration and sit for prolonged periods due to muscle pain, joint pain, fatigue, interrupted sleep, dizziness, nausea and headaches. Two doctors, Dr. Sandra Tirado and Dr. Susan Lacks, provided Attending Physician Statements ("APS") to Aetna in support of Plaintiff's claim. Plaintiff had five treating doctors. Dr. Tirado diagnosed Plaintiff with fibromyalgia and sleep apnea, and stated that she had no ability to work due to concentration difficulty, dizziness, and pain. Dr. Tirado cited musculoskeletal pain, fatigue and excessive daytime drowsiness as limitations on Plaintiff's ability to perform her occupation. Dr. Lacks stated that Plaintiff had no ability to work due to severe limitations in functional capacity due to fibromyalgia and sleep apnea. In November 2009, Aetna determined that Plaintiff met the Policy's definition of disability and approved Plaintiff's claim with the first day of

disability being March 10, 2009. After a 180 day elimination period she became eligible for benefits on September 6, 2009.

Aetna continued to review Plaintiffs claim after approval, it requested updated medical records and a sleep study. In March 2010, Plaintiff informed Aetna that she had been denied disability benefits by the Social Security Administration ("SSA"). Around that time, Dr. Lacks and Dr. David Wolfe submitted extensive medical records and a sleep study conducted by Dr. LoRusso, the study found moderate obstructive sleep apnea. In April 2010, forty-seven minutes of surveillance video taken of Plaintiff over three consecutive days was received by Aetna. The video depicted Plaintiff engaging in various physical activities outside of her home such as walking, dragging garbage cans, carrying items, practicing golf on the driving range, lifting a golf bag, driving her vehicle to various locations and raking.

Subsequently, Dr. Dennis Mazal reviewed the available records and concluded that Plaintiff could perform her occupation as the records did not support a loss of functionality and her limitations were not severe enough to prevent her from performing her sedentary occupation. Dr. Mazal reviewed evaluations from various doctors, including rheumatologist Dr. Wolfe's initial March 2009 evaluation and diagnosis of fibromyalgia. Dr. Mazal based his conclusion

partially on the fact that there was no documentation of any clinically significant cognitive deficits or quantifiable range of motion testing. Dr. Anne MacGuire came to the same conclusion, that Plaintiff's records failed to support functional impairment for the entire time frame. Dr. MacGuire noted that there were no impairments noted in the record that impact work performance, and no reasonable work restrictions, in her opinion Plaintiff's suggested limitations were overly conservative. Dr. MacGuire is a fellow in the American College of Rheumatology and Dr. Mazal is Board Certified in Internal Medicine.

In June 2010, Aetna sent these reviews and the surveillance video to Dr. Tirado and Dr. Lacks, the two doctors who had submitted APSs. Based on this information, both doctors concluded that Plaintiff was capable of sedentary work. Based on the updated information, reviews by the doctors and the surveillance video, Aetna subsequently determined that Plaintiff was not disabled from performing her occupation. In a September 2010 letter Aetna informed the Plaintiff that she was no longer eligible to receive benefits. Aetna summarized the medical information, the surveillance video and the physician reviews, and noted the lack of documentation of significant cognitive defects or musculoskeletal conditions verifying Plaintiff's inability to work. The Plaintiff received benefits from

5

September 6, 2009 to September 22, 2010, at which time Plaintiff's benefits were terminated.

In October 2010 the Social Security Administration ("SSA") approved Plaintiff for disability benefits. The SSA found Plaintiff had the capacity to perform light low stress work but would be limited to one skilled repetitive task. The SSA defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A § 423 (West).

Plaintiff appealed her benefits termination by letter to Aetna in March 2011. Extensive medical records, statements and articles were attached as evidence of disability. The Plaintiff referenced a neuropsychological report ("the report") that was not included in the administrative record submitted to Aetna and subsequently to this Court, apart for pages 7 and 8 of 8 pages, the rest of the report was missing. In July 2012, Plaintiff filed the report with this Court as an addition to the administrative record. The neuropsychological testing was performed in August 2010 on the recommendation of neurologist Dr. Lewis Eberly. Based on the report, Dr. Tirado chose to file an updated report stating that it was her opinion that Plaintiff

had no ability to work. Further, Dr. Eberly completed an APS stating that Plaintiff was completely disabled due to the sleep apnea, degenerative cervical spine, and headaches. Dr. Thomas LoRusso submitted a report indicating that Plaintiff could not work due to the sleep disorder, which impairs her ability to function. Dr. Wolfe submitted a report specifically addressing Aetna's objections set forth in the termination letter. In his report Dr. Wolfe concluded that no level of documentation could prove that Plaintiff was in fact adversely affected by fibromyalgia to the level she had claimed, but based on his experience he believed she did suffer from the condition.

Plaintiff's claim was then reviewed by two independent doctors, Dr. Leonard Schnur, a psychologist, and Dr. Robert Swotinsky, who is a Board Certified in Occupational Medicine. Dr. Schnur concluded that the findings provided did not indicate an impairment of cognitive functioning that would prevent Plaintiff from performing her occupation. After careful review and an extensive analysis of each of Plaintiff's conditions, including peer-to-peer conversations with several of Plaintiff's treating doctors, Dr. Swotinsky concluded that much of the documentation did not support the alleged severity of Plaintiff's conditions. As to the fibromyalgia, Dr. Swotinsky pointed out that the condition is not an actual disease and there is a lack of generally accepted diagnostic criteria

7

available for diagnosis of the condition, he also noted that it is generally unclear whether the condition is mental or physical. Dr. Swotinsky further noted the lack of mental or physical evidence proving Plaintiff's condition of fibromyalgia, and the fact that the physicians based much of their opinion on Plaintiff's own statements. The surveillance video evidenced more physical capability than was being reported, thus Dr. Swotinsky concluded that Plaintiff had demonstrated an ability to perform work at a medium physical level. As to Plaintiff's sleep apnea, Dr. Swotinsky determined that while Plaintiff should not be operating heavy machinery, she should not precluded from performing her sedentary occupation. Dr. Swotinsky did not see Plaintiffs headaches, arthritis or auditory issues as impeding her from performing her occupation.

The physician reviews were sent to Dr. Thomas LoRusso who responded with a letter stating that Plaintiff would not be able to fulfill her occupation's requirements, he largely based his opinion on Plaintiff's reports about her symptoms. Upon review of Dr. LoRusso's letter, Dr. Schnur and Dr. Swotinsky noted that many people with insomnia and/or untreated sleep apnea work and are productive in their occupations. Based on additional investigation and review Aetna finally concluded that Plaintiff was not eligible for further benefits, they informed her in a detailed appeal determination letter in July 2011.

In October 2011 Plaintiff filed suit in this Court pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et. seq. ("ERISA"). In August 2011, both Plaintiff and Defendant moved for summary judgment on the administrative record.

The Court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. "The burden of the moving party . . . may be discharged by simply pointing out 'that there is an absence of evidence to support the nonmoving party's case.'" Carr v. Deeds, 453 F.3d 593, 608 (4th Cir. 2006), citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The Court construes all reasonable inferences in favor of the non-moving party when determining whether there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The mere existence of some disputed facts does not merit a trial unless the disputed facts are material to an issue necessary for proper resolution of the case and the quality and quantity of the evidence offered to support a question of fact are adequate to support a jury verdict. Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995).

This Court must review an ERISA claim "under a de novo standard unless the plan provides to the contrary"

Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008)(internal citations omitted). Plaintiff and Defendant do not dispute that the applicable standard of review to be used by this Court in reviewing Aetna's decision to terminate Plaintiff's disability benefits is de novo. The de novo standard of review allows the court to examine all of the evidence in the record and decide whether or not the Plaintiff is totally disabled without giving any deference to the plan administrator's decision to deny or terminate disability benefits. See Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1025 (4th Cir. 1993). It is within the Court's discretion to decide the extent of the evidence included for review.

> [W]e adopt a scope of review that permits the district court in its discretion to allow evidence that was not before the plan administrator. The district court should exercise its discretion, however, only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision. In most cases, where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator or trustee at the time of the determination

Id. At 1026-27.

This Court does not find it necessary to evaluate evidence beyond the extensive administrative record that was presented to and evaluated by Aetna. There are no extenuating circumstances

such as flawed administrative review procedures or a limited evidentiary record in this case. See Id. at 1027. The evidence considered by this Court does not include the neuropsychological report as only two pages of that report appear in the administrative record. Moreover, the report was sent to Aetna in August 2011, after Aetna's final decision on Plaintiff's appeal. Plaintiff contends that the report was sent during the administrative appeal process at some point and then again in August 2011. There is no evidence of the report being sent more than once in the administrative record submitted to this Court. Though the cover sheet of the fax sent in August 2011 indicates 10 pages were to be included in the fax, it appears only pages 7 and 8 were included. Nonetheless, Aetna had already reviewed Plaintiff's claim and come to a conclusion at the time the full report was sent to Aetna. Plaintiff had every opportunity to present the report to Aetna prior to that time and failed to do so. The report was available and requested, but was not provided in full. Plaintiff was represented by an attorney and was invited to submit anything she wished in support of her claim, thus Aetna did not have a duty to obtain a copy of the report. See LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 206 (4th Cir. 1984).

Aetna properly assessed Plaintiff's job description in a general sense and on a national scale, as is provided in the

Policy, and applied medical evaluations and submissions to her occupational duties in order to determine whether or not Plaintiff was disabled under the Policy. The evidence before Aetna initially was vastly different from the evidence that was before it at the time of the decision to terminate benefits. The two original treating physicians that supported the fact that Plaintiff could not perform her occupation, Dr. Tirado and Dr. Lacks, upon being presented with the physician reviews and surveillance video, concluded that Plaintiff was in fact capable of sedentary work. Two independent medical consultants also concluded Plaintiff was not disabled from her occupation. Additionally, Plaintiff's activity depicted in the surveillance video indicated a more enhanced physical ability than was originally being represented.

Moreover, upon Plaintiff's appeal Aetna undertook a thorough review of the claim. Aetna considered additional physician reviews conducted by independent medical professionals, among other things, and determined that the evidence did not support the conclusion that Plaintiff could not perform her occupation. The lack of objective and solid evidence pointing to the fact that Plaintiff was disabled ultimately influenced Aetna's decision. It was Plaintiff's burden to submit enough objectively sufficient evidence that she

was not able to perform the material duties of her occupation, she did not do so.

Additionally, neither Aetna's prior awards benefit nor the SSA's decision to give Plaintiff benefits entitle Plaintiff to benefits. The "decision to grant benefits initially cannot create an obligation by which a plan fiduciary is estopped from later terminating benefits." Hensley v. Int'l Bus. Machines Corp., 123 F. App'x 534, 538 (4th Cir. 2004). Further investigation and review may result in a different determination as to benefits, particularly when new and different evidence is presented. Between November 2009 and September 2010, Aetna received additional medical records, a sleep study, a surveillance report, physician reviews, and new APSs. This new information caused Aetna to reach a different determination as to Plaintiff's benefits. Moreover, the social security disability award is not entitled to significant weight. The SSA's decision is certainly not binding and, "[t]he Plan Administrator was under no obligation to weigh the agency's disability determination more favorably than the other evidence." Elliott v. Sara Lee Corp., 190 F.3d 601, 607 (4th Cir. 1999). "What qualifies as a disability for social security disability purposes does not necessarily qualify as a disability for purposes of an ERISA benefit plan-the benefits provided depend entirely on the language in the plan." Smith v. Cont'l

13

Cas. Co., 369 F.3d 412, 420 (4th Cir. 2004). The aforementioned definitions of disability by the SSA and by Aetna differ significantly. The SSA may have been presented with different materials, has a different process of review and different regulations under which a determination is made; its decision is not dispositive.

Moreover, Plaintiff asserts that the opinions of her treating physicians were not given due consideration. However, ERISA does not require plan administrators to accord special deference to the opinions of treating physicians. See Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003). There was conflicting reliable evidence presented to Aetna and no special weight should have been given to Plaintiff's treating physicians. All of the evidence was considered and Aetna came to a reasonable conclusion after extensive review.

The issue before the Court is whether Plaintiff is disabled to the point where she cannot perform the material duties of her occupation. Plaintiff's occupational requirements include duties relating to management, analysis, consulting, communication etc., as previously mentioned. Her general job description, as performed on a national scale, equates to a mostly sedentary position with some opportunity for mobility. Plaintiff and her doctors have suggested that movement and exercise would help to improve her condition, and it is clear

from the surveillance video that she is capable of certain physical activity. Thus, the limited mobility her occupation provides only serves to improve her condition. In addition, there is no substantial evidence in the administrative record that demonstrates physical and cognitive difficulties that rise to the level of completely precluding Plaintiff from performing the sedentary aspects of her occupation.

Multiple board certified medical professionals have come to the conclusion that Plaintiff can perform the duties of her occupation; Dr. Lacks, Dr. Mazal, Dr. MacGuire, Dr. Schnur and Dr. Swotinsky. Dr. Tirado also at one point concluded Plaintiff could perform her position, but changed her mind multiple times throughout the course of Plaintiff's claim review. Plaintiff's other personal treating physicians came to the opposite conclusion, including Dr. Eberly, Dr. Wolfe and Dr. LoRusso. However, on balance the administrative record, along with the surveillance video, indicate that the severity of Plaintiff's conditions and resulting restrictions do not amount to the complete inability to perform her occupation. While Plaintiff may have limitations due to her conditions, that does not entitle her to benefits under the Policy as she must meet the provided definition of disability. This Court finds that the administrative record does not support the conclusion that Plaintiff is disabled to the point that she cannot perform the

duties normally required for her occupation. Defendant's Motion for Summary Judgment should be granted.

                                              /s/
                            Claude M. Hilton
                       United States District Judge

Alexandria, Virginia
January 17, 2013